# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| MORRIS PUBLISHING GROUP, LLC, et al., | * | Case No. 10-10134 (JSD) |
| | * | Jointly Administered |
| Debtors. | * | |
| JUDITH SERAPHIN and ED SLAVIN, | * | |
| Appellants, | * | |
| v. | * | CV 110-056 |
| MORRIS PUBLISHING GROUP, LLC, et al., | * | |
| Appellees. | * | |

**ORDER**

Presently pending before the Court is Appellees' "Motion to Dismiss Appeal and for an Order Awarding Damages and Costs for Frivolous Appeal Pursuant to Bankruptcy Rule 8020." (Doc. no. 7.) Upon due consideration, Appellees' motion to dismiss is **GRANTED** and their motion for damages and costs is **GRANTED IN PART AND DENIED IN PART**.

# I. BACKGROUND

On January 19, 2010, Morris Publishing Group, LLC and fourteen affiliated entities ("Appellees") filed petitions for relief under Chapter 11 and a joint plan of reorganization in the United States Bankruptcy Court for the Southern District of Georgia ("Bankruptcy Court").[1] Appellees are publishers and one of their numerous publications is the St. Augustine Record (the "Record"), which provides local and national news to the citizens of St. Augustine, Florida.

On January 25, 2010, *pro se* litigants Judith Seraphin and Ed Slavin ("Appellants") filed a "Motion to Intervene, Motion to Appoint Trustee or Examiner and Motion to Hold Telephonic Hearing on Debtor's Neglect of Journalistic Duties." (Doc. no. 1, Ex. 14) Appellants are self-proclaimed "local community activists" from St. Augustine, Florida, who read and subscribe to the Record. (Id. at 1.) In their January 25, 2010 motion, Appellants stated that they have been "horrified" by the general decline in the quality and quantity of the Record's news coverage over the past five to ten years. (Id.) Appellants sought to intervene in the bankruptcy proceeding below "because [Appellees] have admitted there will be 'no change' [in news coverage] as a result of their Chapter 11 filing," which Appellants claim is "akin to an alcoholic going to his first AA

---

[1] The cases were consolidated for procedural purposes and jointly administered.

meeting, saying there will be 'no change.'" (Id. at 1.) Appellants also sought to present their concerns "about declining news budgets and journalistic practices after full and fair disclosure and discovery, at an evidentiary hearing, with mandatory testimony by Morris Communications' owners and managers about the etiology of their wretched failure to cover the news without fear or favor due to declining news budgets." (Id. at 2.)

In a thorough and well-reasoned order, the Bankruptcy Court denied Appellants' motion, which was treated as an objection to confirmation. The court held that Appellants lacked standing as parties in interest or on behalf of the appellees' bondholders, and had not shown sufficient cause for intervention.[2] (See Doc. no. 1, Ex. 20.) Appellants subsequently filed a motion for reconsideration on February 16, 2010 (doc. no. 1, Ex. 28), which the Bankruptcy Court swiftly denied (see doc. no. 1, Ex. 29).[3]

Appellants filed a single notice of appeal, as well as a single designation of items in the record and statement of issues presented, regarding both Bankruptcy Court orders. (See Doc. no. 1, exs. 33 & 39.) Appellees filed a motion to dismiss

---

[2] Appellants do not contend that they are bondholders.

[3] Appellants' motion for reconsideration largely ignored the substance of the Bankruptcy Court's Order. Rather than addressing the Order's numerous citations to authority, Appellants continued asserting claims based upon their belief that their right to intervene arises from the public's interest and the First Amendment of the Constitution. (See Doc. no. 28 at 2 ("Our Constitution is in shreds if Debtors are permitted to escape from their debts and to change nothing and to do nothing to improve the quality of the newspaper in our Nation's Oldest City.").)

3

asserting the following: (1) Appellants lack standing to pursue the appeal; and (2) the appeal is moot because the plan of reorganization has been substantially consummated and effective relief is no longer available to Appellants. (See Doc. no. 7.) Appellants have responded in opposition (doc. no. 12),[4] and all briefing has been stayed pending the resolution of the motion before the Court (doc. no. 15).

## II. DISCUSSION

### A. Standing

In order to pursue a bankruptcy appeal, a party must demonstrate that it has standing under the Federal Bankruptcy Code. In re A & A Commc'ns Dev., Inc., No. 6:07-cv-1731, 2008 WL 879434, at *2 (M.D. Fla. Mar. 28, 2008). The Eleventh Circuit has set forth the following test for determining whether a party has standing to appeal a bankruptcy court order:

> A person has standing to appeal an order of a bankruptcy court if she is a "person aggrieved" by the order. "Aggrieved" parties in the bankruptcy context are those parties having a direct and substantial interest in the question being appealed. The person aggrieved doctrine is more restrictive than traditional Article III standing, as it allows a person to appeal a bankruptcy order *only when they are directly and adversely affected pecuniarly by the order*. Thus, standing is limited to persons with a financial stake in the order being appealed such that the order diminishes her property, increases her burden, or impairs her rights.

---

[4] Appellants also filed a motion to strike Appellees' motion to dismiss and motion for sanctions. (Doc. no. 13.)

4

In re Vick, 233 Fed. Appx. 897, 899 (11th Cir. 2007) (emphasis added). Under this rubric, standing will generally be "denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy's court's order, are not 'directly affected' by that order." In re ANC Rental Corp., 57 Fed. Appx. 912, 914 (3d Cir. 2003) (internal quotations omitted); see also Comjean v. Cruickshank, 191 B.R. 504, 507 (D. Mass. 1995) ("The aggrieved person rule insures 'that bankruptcy proceedings are not unreasonably delayed by protracted litigation' . . . of . . . nominal parties." (citation omitted)).

The undisputed facts of this case demonstrate that Appellants lack standing to appeal. As both Appellees and the Bankruptcy Court have noted, Appellants are unimpaired under the now-effective Plan and, consequently, can show no "pecuniary interest" in the orders from which they appeal.[5] Even assuming Appellants have an unsatisfied claim as subscribers of the Record, which has not been alleged, such a claim is not impaired under the Plan.[6] With regard to holders of general unsecured

---

[5] The Court also notes that pursuant to 11 U.S.C. § 1126(f), "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan."

[6] At no time have Appellants ever identified any cognizable financial interest in this case or concern with the precedential ramifications of the Bankruptcy Court's ruling. By all appearances, Appellants' interest in this case arises solely from their general desire to improve the quality of the Record and ensure its continued publication. (See Doc. no. 12 at 9 ("[W]e are 'persons aggrieved' because the quality and quantity of news (especially

claims, which would include newspaper subscribers, the Plan provides as follows:

> [Such claims] shall be paid . . . in full in Cash, or otherwise receive such treatment as to render such Holder Unimpaired. An Allowed General Unsecured Claim that is not due and payable on or before the Effective Date shall be paid thereafter . . . (1) in the ordinary course of business in accordance with applicable law or the terms of any agreement that governs such Allowed General Unsecured Claim or (ii) in accordance with the course of practice or dealing between the Debtors and such Holder with respect to such Allowed Unsecured Claim.

(Doc. no. 1, Ex. 30 at 67.) Moreover, the Plan expressly preserves Appellants' right to pursue any disputed claims in the appropriate non-bankruptcy forum:

> Except as set forth herein, any disputes regarding the validity or amount of the Claim will be resolved consensually or through judicial means outside the Bankruptcy Court. . . . All rights, obligations and defenses with respect to Unimpaired Disputed Claims are expressly preserved and may be asserted by the Debtors, Reorganized Debtors or the Holders of such Unimpaired Disputed Claims in the Bankruptcy Court or other appropriate non-bankruptcy forum.

(Id. at 83.)

In sum, the Court is unable to find any basis upon which to conclude that Appellants are "aggrieved parties," and, thus, have standing to appeal. See In re Citation Corp., 371 B.R. 518, 522 (N.D. Ala. 2007) ("[T]he court is of the opinion that [the appellee] is not an aggrieved person, and consequently

---

investigative reporting) has diminished at the St. Augustine Record in the past several years.").)

6

lacks standing to pursue this appeal."). Accordingly, Appellees' motion to dismiss is **GRANTED**.

### B. Mootness

In their motion to dismiss, Appellees contend that even assuming Appellants did have standing, the appeal should be denied as moot. Appellants do not address this argument in their response.

"Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief. Put another way, the court must determine whether the 'reorganization plan has been so substantially consummated that effective relief is no longer available.'" In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992) (quoted source omitted). The test for mootness, however, does not depend upon the issue of substantial consummation alone; it also requires a consideration of the specific circumstances of an individual case. Id. For instance, a court may look to the following:

> (1) a consideration of the interests of finality and the passage of time, (2) whether there has been a comprehensive change in the circumstances, (3) whether a stay has been obtained and if not, why not, (4) whether the debtor's reorganization plan has been substantially consummated and if so, what type of transactions have been consummated, (5) the type of relief sought, (6) the effect of granting such relief on third parties not currently before the Court, and (7) the threat to the re-emergence of the debtor as a revitalized entity.

7

In re Condec, Inc., 225 B.R. 800, 803 (M.D. Fla. 1998).

The Bankruptcy Court denied Appellants' motion for reconsideration of its Order denying Appellants' motion to intervene on February 16, 2010. The next day, on February 17, 2010, the Bankruptcy Court entered the Confirmation Order. (Doc. no. 1, Ex. 32.) At no time have Appellants sought a stay of this Order, nor have they presented the Court with any explanation as to why a stay was never sought. Based upon the record before the Court, Appellants appear to have sat idly by as Appellees confirmed, implemented, and substantially consummated the Plan.[7] Since the orders appealed from were entered, the following actions have taken place pursuant to the Plan and the Confirmation Order:

> (1) Morris Publishing placed liens on substantially all of its real estate assets for the benefit of the holders of the newly issued notes; (2) Morris Publishing cancelled over $300 million of old notes; (3) Morris Publishing distributed approximately $100 million in new notes; (4) New notes have been publicly traded to a number of third party purchasers in arms-length transactions since the Effective Date; (5) More than $110 million of Morris Publishing's Tranche C Senior Debt was extinguished as a result of the

---

[7] "'[S]ubstantial consummation' means—(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).
It is undisputed that Morris Publishing has transferred all of the property to be transferred under the Plan through its approved management team, which assumed continued responsibility of the operation of the businesses since the Effective Date and Morris Publishing has made substantially all of the distributions contemplated by the Plan.

restructuring transactions contemplated by the Plan, including a capital contribution of more than $85 million by certain affiliates of Morris Publishing; (6) Morris Publishing completed certain refinancing transactions resulting in the elimination of approximately $7.1 million in Tranche B term loans and the creation of a $10.0 million working capital facility; (7) Morris Publishing made an interest payment of more than $800,000 to noteholders of record as of March 15, 2010, some of whom have since transferred their notes to third party purchasers; and (8) Morris Publishing has redeemed more than $3.2 million of new notes, pursuant to the terms of the new indenture that became effective as of the Effective Date.

(Stone Decl. ¶ 4.)

Appellees have clearly demonstrated that a fundamental change in circumstances has occurred. At this point, granting Appellants the relief they seek would be either meaningless or impermissible due to the adverse impact such relief would have on third parties not before the Court.[8] To reverse course now would undoubtedly adversely impact the holders of recently acquired notes, the parties that contributed to the satisfaction of the Tranche C debt, and the lenders that have extended funds to Morris Publishing as part of the elimination of the Tranche B

---

[8] Appellants seek, *inter alia*, "a telephone hearing on Debtors' plans, if any [sic] there be any, for improved newspaper coverage." (Doc. no. 39 at 2.) Not only is such a hearing inappropriate in this case, but it would serve little purpose at this time since Appellants' Plan has been substantially consummated.

Appellants also assert that the Bankruptcy Court erred "by holding only a 20 minute hearing before granting the preplanned bankruptcy, thereby allowing Debtors to pay some 36 cents on the dollar." (Id. at 1.) Appellees correctly point out that if the Court were to find in Appellants' favor on this issue, the Court would necessarily have to vacate the Confirmation Order and remand the case to the Bankruptcy Court, which would detrimentally affect the Appellees and numerous third parties.

term loans and the creation of the $10.0 million working capital facility.

Accordingly, even if Appellants had standing, their appeal would be denied as moot.

**C. Damages and Costs for Appeal**

In conjunction with their motion to dismiss, Appellees have filed a motion for damages pursuant to Federal Rule of Bankruptcy Procedure 8020. (Doc. no. 7.) Rule 8020 reads as follows:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. Bankr. P. 8020.

"Because the language of Rule 8020 is similar to Federal Rule of Appellate Procedure 38, courts apply cases interpreting Rule 38 in determining whether to grant sanctions under Rule 8020." Steffen v. Berman, No. 8:09-cv-1953, 2010 WL 2293235 (M.D. Fla. June 7, 2010) (citing advisory committee note to federal bankruptcy rule 8020). "Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenerette ACLI

10

Futures, Inc., 853 F.2d 834, 841 (11th Cir. 1988) (citation omitted). "For purposes of Rule 38 sanctions, a claim is frivolous if it is 'utterly devoid of merit.'" Nettles, Jr. v. City of Leesburg Police Dept., No. 09-14327, 2010 WL 5382914, at *7 (11th Cir. Dec. 22, 2010) (quoting Bonfiglio v. Nugent, 986 F.2d 1391, 1393 (11th Cir. 1993)).

Here, there is virtually no question as to the frivolousness of the pending appeal and the motions upon which it is based. To this day, Appellants have provided no arguable legal basis for why they should have been allowed to inject themselves into the underlying bankruptcy proceedings. Furthermore, it has been clear from the outset that Appellants became involved in these proceedings because they perceived it as an opportunity to address their personal grievances regarding the Record on a public stage. (See Doc. no. 1, Ex. 14 ("Refusal to cover the news adequately, violating the standard of care, amidst cutbacks on staff result in a death spiral of declining interest in newspapers, MORRIS PUBLISHING must be held accountable.").)

Bankruptcy courts are not to be utilized as corporate complaint departments or as public square soapboxes; they are not open to every individual who has an issue or concern regarding a pending bankruptcy. The Bankruptcy Court made this point in its Order denying Appellants' objection to confirmation

11

through its detailed discussion of standing and intervention in a bankruptcy proceeding. (See Doc. no. 1, Ex. 20.) However, beyond the assertion of unsupported legal conclusions and misguided attempts to implicate the Constitution, Appellants utterly ignored the substance of the Bankruptcy Court's Order in their frivolous motion for reconsideration. (See Doc. no. 1, Ex. 28.)

The present appeal appears to be just another attempt to harass Appellees and bully them into meeting with Appellants regarding what Appellees perceive as the "declining quality" of news coverage at the Record. Appellants are not only unable to establish that they have standing here, but have also failed to identify a single issue that could reasonably be considered a potential basis for reversal of the Bankruptcy Judge's prior decisions. Appellants proceed on appeal as they have throughout the proceedings below, by addressing the law only when it is perceived as favorable to their position. Otherwise, Appellants ignore the law completely, even when it is presented directly to them through briefs and court orders. For example, Appellants totally failed to address Appellees' detailed argument for dismissal on mootness grounds.

Put simply, the pending appeal is entirely devoid of merit and thus there exists an appropriate basis for sanctions under Rule 8020. Nevertheless, the Court recognizes that Appellants

are *pro se* litigants and the Eleventh Circuit is generally reluctant to impose sanctions on such parties, unless special circumstances exist. See S.E.C. v. Pension Fund of Am. L.C., 379 Fed. Appx. 832, 836 (11th Cir. 2010) (citing Woods v. I.R.S., 3 F.3d 403, 404 (11th Cir. 1993)). For instance, the Eleventh Circuit has approved sanctions when a *pro se* litigant happens to be an attorney. See Bonfiglio, 986 F.2d at 1394 (imposing Rule 38 sanctions on *pro se* litigant in part because he was an attorney who "should have known better").

Appellees have presented the Court with evidence that Appellant Ed Slavin ("Slavin") previously practiced law in Tennessee before being disbarred after several individuals filed complaints against him with Tennessee's Board of Professional Responsibility.[9] (See Doc. no. 7, Ex. 1 at 10-24.) In his response, Slavin does not dispute this fact.

The Court finds the Eleventh Circuit's reasoning in Bonfiglio instructive here; given Slavin's legal background, he "should have known better" than to inappropriately inject himself into these proceedings and then, once involved, relentlessly pursue frivolous claims despite being presented

---

[9] Appellants argue that this evidence cannot be considered in conjunction with Appellees' motion because it does not appear in the record below; Appellants cite Bankruptcy Rule of Procedure 8006 in support thereof. (See Doc. no. 13.) This rule, however, only addresses consideration of the actual appeal; it does not address 8020 motions. Moreover, Appellees correctly point out that Federal Bankruptcy Rule of Procedure 8011 specifically contemplates the submission of "briefs, affidavits or other papers" in support of motions filed under these rules. (Doc. no. 17 at 1.)

13

with law in direct conflict with his position. Bonfiglio, 986 F.2d at 1392. Moreover, as a former licensed attorney, Slavin undoubtedly comprehended, and subsequently disregarded, the costs and fees that Appellees would inevitably incur as a result of his frivolous appeal. The loss of his license to practice law did not remove from Slavin's mind the specialized knowledge that should have alerted him to the absence of merit of this appeal.

On the other hand, while Appellees have proven that Slavin is an appropriate exception to the Eleventh Circuit's general rule regarding *pro se* litigants, no such exception applies to his co-Appellant Judith Seraphin. Given her *pro se* status and the fact that no special circumstances exist to justify an award of damages and costs against her, the Court is unwilling to grant Appellees' motion as to her.

Accordingly, Appellees' motion for damages and costs for the filing of a frivolous appeal is **GRANTED** as to Ed Slavin and **DENIED** as to Judith Seraphin.

### III. CONCLUSION

Based upon the foregoing, Appellees' motion to dismiss (doc. no. 7) is hereby **GRANTED**, and Appellees' motion for damages and costs is **GRANTED** as to Ed Slavin and **DENIED** as to

14

Judith Seraphin. Correspondingly, Appellants' motion to strike (doc. no. 13) is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to **CLOSE** this case and terminate all pending motions. The Court shall retain jurisdiction for the limited purpose of awarding damages and costs pursuant to Bankruptcy Rule of Procedure 8020. Appellees are **DIRECTED** to submit a detailed accounting of all costs and fees directly related to the now-dismissed appeal, in addition to an appropriate affidavit attached thereto, within fourteen (14) days of the date of this Order. Appellants will then have fourteen (14) days from the date of Appellees' submission to file their objections. Upon receiving all necessary materials, the Court will enter an order awarding just damages and costs to Appellees.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of March, 2011.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA