IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| MORRIS PUBLISHING GROUP, LLC, et al., | * | Case No. 10-10134 (JSD) |
| Debtors. | * | Jointly Administered |
| JUDITH SERAPHIN and ED SLAVIN, | * | |
| Appellants, | * | |
| v. | * | CV 110-056 |
| MORRIS PUBLISHING GROUP, LLC, et al., | * | |
| Appellees. | * | |

**O R D E R**

Presently pending before the Court is Appellees' Bill of Costs (doc. no. 22), which the Court treats as a motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020, and Appellant Ed Slavin's Preliminary Response to Debtors Demand for Fees (doc. no. 23). Appellees' motion is **GRANTED** to the extent set forth below.

## I. BACKGROUND

On January 19, 2010, Morris Publishing Group, LLC and fourteen affiliated entities ("Appellees") filed petitions for relief under Chapter 11 and a joint plan of reorganization in the United States Bankruptcy Court for the Southern District of Georgia ("Bankruptcy Court").[1] Appellees are publishers, and one of their numerous publications is the St. Augustine Record (the "Record"), which provides local and national news to the citizens of St. Augustine, Florida.

On January 25, 2010, *pro se* litigants Judith Seraphin and Ed Slavin ("Appellants") filed a "Motion to Intervene, Motion to Appoint Trustee or Examiner and Motion to Hold Telephonic Hearing on Debtor's Neglect of Journalistic Duties." (Doc. no. 1, Ex. 14) Appellants are self-proclaimed "local community activists" from St. Augustine, Florida, who read and subscribe to the Record. (Id. at 1.) In their January 25, 2010 motion, Appellants stated that they have been "horrified" by the general decline in the quality and quantity of the Record's news coverage over the past five to ten years. (Id.) Appellants sought to intervene in the bankruptcy proceeding "because [Appellees] have admitted there will be 'no change' [in news coverage] as a result of their Chapter 11 filing," which Appellants claim is "akin to an alcoholic going to his first AA meeting, saying there will be 'no change.'" (Id. at 1.) Appellants also sought to present their concerns "about declining

---

[1] The cases were consolidated for procedural purposes and jointly administered.

2

news budgets and journalistic practices after full and fair disclosure and discovery, at an evidentiary hearing, with mandatory testimony by Morris Communications' owners and managers about the etiology of their wretched failure to cover the news without fear or favor due to declining news budgets." (Id. at 2.)

In a thorough and well-reasoned order, the Bankruptcy Court denied Appellants' motion, which was treated as an objection to confirmation. The court held that Appellants lacked standing as parties in interest, and had not shown sufficient cause for intervention. (See Doc. no. 1, Ex. 20.) Appellants subsequently filed a motion for reconsideration on February 16, 2010 (doc. no. 1, Ex. 28), which the Bankruptcy Court denied (see doc. no. 1, Ex. 29).[2]

Appellants filed a single notice of appeal, as well as a single designation of items in the record and statement of issues presented, regarding both Bankruptcy Court orders. (See Doc. no. 1, exs. 33 & 39.) Appellees subsequently filed a motion to dismiss the appeal. (See Doc. no. 7.) In conjunction with their motion to dismiss, Appellees filed a motion for damages pursuant to Federal Rule of Bankruptcy Procedure 8020. (Doc. no. 7.)

On March 28, 2011, this Court granted Appellees' motion to dismiss the appeal. (Doc. no. 20.) The Court held that Appellants

---

[2] Appellants' motion for reconsideration largely ignored the substance of the Bankruptcy Court's Order. Rather than addressing the Order's numerous citations to authority, Appellants continued asserting claims based upon their belief that their right to intervene arises from the public's interest and the First Amendment of the Constitution. (See Doc. no. 28 at 2 ("Our Constitution is in shreds if Debtors are permitted to escape from their debts and to change nothing and to do nothing to improve the quality of the newspaper in our Nation's Oldest City.").)

3

lacked standing to appeal because they were not aggrieved parties. Moreover, the Court found that even if Appellants had standing, their appeal would be denied as moot because the plan of reorganization had been substantially consummated and effective relief was no longer available to Appellants.

In regard to the motion for damages, the Court found that the appeal was "entirely devoid of merit" as Appellants had "ignored the substance of the Bankruptcy Court's Order in their frivolous motion for reconsideration." As such, the Court found that there was an appropriate basis for sanctions under Rule 8020. The Eleventh Circuit's reluctance to impose sanctions on *pro se* litigants led the Court to conclude that sanctions could not be imposed upon Appellant Judith Seraphin. However, because Appellant Ed Slavin was a formerly licensed attorney, the Court found that sanctions could be imposed upon him. See Bonfiglio v. Nugent, 986 F.2d 1391, 1394 (11th Cir. 1993) (imposing Rule 38 sanctions on *pro se* litigant in part because he was an attorney who "should have known better"). The Court retained jurisdiction for the limited purpose of awarding damages and costs pursuant to Rule 8020, and Appellees were directed to submit a detailed accounting of all costs and fees directly related to the dismissed appeal.

In compliance with the Court's Order, Appellees have now submitted a Bill of Costs (doc. no. 22) and the Affidavit of Nicholas M. Miller, a partner at the law firm of Neal Gerber & Eisenberg, LLP ("NGE"). According to these documents, Appellees seek a total of $59,772.06 in costs and fees. This amount

includes, among other things, $56,864.50 in attorney's fees, $907.56 in fees relating to copying charges and other court fees, and $875.00 for fees of the Clerk. Appellees believe that an award of sanctions for the full amount requested is warranted because Slavin does not appear to be deterred by the Court's Order.

In his response, Slavin once again challenges the Court's decisions regarding standing and mootness. Moreover, he asserts that the bill of costs is "retaliatory." He claims that imposing a nearly $60,000.00 fee amounts to an excessive fine in violation of the Eight Amendment.

## II. DISCUSSION

Sanctions for taking an appeal may be granted in the Court's discretion pursuant to Rule 8020 of the Federal Rules of Bankruptcy Procedure. Because the language of Rule 8020 is similar to Federal Rule of Appellate Procedure 38, courts apply cases interpreting Rule 38 in determining whether to grant sanctions under Rule 8020. See Steffen v. Berman, No. 8:09-cv-1953, 2010 WL 2293235 (M.D. Fla. June 7, 2010) (citing advisory committee note to federal bankruptcy rule 8020). "Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenerette ACLI Futures, Inc., 853 F.2d 834, 841 (11th Cir. 1988) (citation omitted). "For purposes of Rule 38 sanctions, a claim is frivolous if it is 'utterly devoid

of merit.'" Nettles, Jr. v. City of Leesburg Police Dept., 415 Fed. Appx. 116, 123 (11th Cir. 2010) (quoting Bonfiglio v. Nugent, 986 F.2d 1391, 1393 (11th Cir. 1993)).

Because the Court previously determined that sanctions are appropriate in this case, the only question before this Court is the amount of fees that should be imposed upon Slavin. A district court "may award just damages and single or double costs" if the appeal is frivolous. Fed. R. Bank. P. 8020. Moreover, sanctions awarded by the Court must be sufficiently related to or directly caused by the filing of the appeal. Lyddon v. Geothermal Props., 996 F.2d 212, 214 (9th Cir. 1993) (citing Cooter & Gell v. Hatmarx Corp., 496 U.S. 384 (1990)). This excludes, for example, costs associated with the filing of the motion for sanctions itself. Id. The Court is also cognizant of the fact that "[w]hile an award of attorney's fees may be necessary to fulfill the deterrent purposes of Rule 8020, the award should not subject the appellant to financial ruin." In Re Busson-Sokolik, 635 F.3d 261, 271 (7th Cir. 2011) (internal citations omitted).

Here, Appellees seek $56,864.50 in attorney's fees for the work performed on the bankruptcy appeal. As an initial matter, the Court can only consider the time actually spent by Appellees on the appeal. The fees should be limited to the time period between Appellants' filing of their notice of appeal and the Court's Order deeming the appeal frivolous. Therefore, the Court only considered fees accrued between February 24, 2010 and March 28, 2011. As

such, Appellees are not entitled to recover for the time spent reviewing this Court's March 28, 2011 Order.

Appellees assert that their request for fees in the amount of $56,864.50 is reasonable in light of a number of factors. These factors include the experience of Appellees' counsel, the volume of pleadings, the complexity of the appeal and its importance to the success of the underlying Bankruptcy case, the time devoted by counsel to handling the appeal, and the cost of comparable services in the relevant market. While the Court does not dispute the high quality of the legal work provided by Appellees' counsel and the importance of the appeal to this complex Bankruptcy case, the appeal standing alone did not involve overly complex facts or legal issues. Further, the Court does not agree that a higher national standard for attorney's fees should apply. This appeal involved two *pro se* appellants raising claims, albeit frivolous claims, against a single local newspaper owned by Appellees. This appeal is simply not the type of nationally significant case that would warrant the application of national legal market standards. The request for fees should instead be governed by the standards of the Southern District of Georgia.

In light of these findings and recognizing that Slavin proceeded *pro se*, the Court believes that an award of attorney's fees in the amount of $10,000 is an appropriate sanction that will deter him from filing frivolous motions in the future without causing him severe financial hardship.

### III. CONCLUSION

Based on the foregoing, Appellees' motion (doc. no. 22) is **GRANTED** to the extent set forth above. Damages are awarded in the amount of $11,784.56, which represents attorney's fees plus costs, against Appellant Slavin. The Clerk is **DIRECTED** to **ENTER A JUDGMENT** against Appellant Ed Slavin in favor of Appellees for $11,784.56.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of April, 2012.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA